## Hawkes, Appellant, v. Philadelphia.

*Road law—Unopened streets—Deed—Implied easement of right-of-way—Presumption — Res gestœ — Rebuttal—Estoppel—Boundaries—Dedication—Damages—Act of May 9, 1899, P. L. 173.*

1. Where land is conveyed bounded by an unopened street projected by a municipality, the grantee by implication acquires an easement over the bed of that street, unless the circumstances attending the conveyance and the description of the grant negative such implication. Such act is in no sense a dedication, nor does the owner covenant that the municipality shall in the future open that street. The lot is sold subject to a possible relinquishment, by the municipality, of its right to open; but, if it does open the street for public use, whatever covenant springs from the conveyance of a lot so bounded, is executed when the street is actually opened as a street. The "attending circumstances" which defeat the implication of a covenant or easement must be gathered from the instrument conveying the land, and the res gestœ of the transaction.

2. When the city relinquishes its right to open by proper municipal action, one of the inducing features held out to the grantee to purchase disappears but the implied contract or easement of a way from the lot as between grantor and grantee is not destroyed. It is, however, limited to such way as may be reasonably necessary

to the enjoyment of the lot or lots sold, corresponding in its essential requirements to the street named in the deed. The grantor and his assigns are estopped from asserting the contrary.

3. In a proceeding against the City of Philadelphia to assess damages for the value of a piece of land forming the northern half of the bed of Arch street between two streets named. The court will direct judgment against the plaintiff where it appears that prior to May 21, 1858, the portion of Arch street was plotted on the city plans, but not opened; that on May 21, 1858, the owner's predecessor in title conveyed the land north of Arch street, describing it as beginning at a point in the north line of Arch streets, and extending along the north side of said street, etc.; that later in the same year he conveyed to another party the land on the south side of Arch street, describing it as running eastwardly along the middle line of Arch street; that in 1910, when the city authorized the opening of the northern half of Arch street, the southern half was used as a street by the public, and that the parties agreed of record that the northern half of the street subject to an implied covenant for easement of right-of-way, was valueless.

4. The Act of May 9, 1889, P. L. 173, which provided that streets laid out on plans of lots, but not opened for twenty-one years next after the laying out of the same should not be opened without the consent of the owner, does not apply where a portion of the width of the street has been used by the public within the twenty-one years.

Argued Jan. 16, 1919. Appeal, No. 93, Jan. T., 1919, by plaintiff, from judgment of C. P. No. 4, Philadelphia Co., June T., 1912, No. 3628, for defendant n. o. v., in case of Thomas G. Hawkes v. Philadelphia. Before BROWN, C. J., FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Appeal from award of jury of view. Before FINLETTER, J.

Verdict for plaintiff for $2,600. The court entered judgment for defendant n. o. v. Plaintiff appealed.

*Error assigned* was in entering judgment for defendant n. o. v.

*Edwin O. Lewis,* for appellant.—We regard the case as identical in facts with Neely v. Phila., 212 Pa. 551, and

look upon the question of law as being decisively ruled in favor of the appellant by the decisions in the Neely case, in Fitzell v. Phila., 211 Pa. 1, and in the following cases subsequently decided: Tesson v. Porter Company, 238 Pa. 504; Shetter v. Welzel, 242 Pa. 355; Bell v. Pittsburgh Steel Company, 243 Pa. 83; Henderson v. Young, 260 Pa. 334; Bellefield Avenue, 2 Pa. Superior Ct. 148; Felin v. Phila., 241 Pa. 164.

The Act of May 9, 1889, P. L. 173, applies: Quicksall v. Phila., 177 Pa. 301; Oakley v. Luzerne Boro., 25 Pa. Superior Ct. 425; Shamokin v. Helt, 250 Pa. 80; Scott v. Donora South R. R. Co., 222 Pa. 641; Cotter v. Phila., 194 Pa. 496; Woodward v. Pittsburgh, 194 Pa. 193.

*M. J. O'Callaghan,* with him *Glenn C. Mead,* Assistant City Solicitor, and *John P. Connelly,* City Solicitor, for appellee.—Where a deed describes land as fronting on a street, the grantee takes to the center line thereof: Bleim v. Daubenspreck, 169 Pa. 282; Fitzell v. Phila., 211 Pa. 1; Neely v. Phila., 212 Pa. 551; South Twelfth Street, 217 Pa. 362; Clymer v. Roberts, 220 Pa. 162.

OPINION BY MR. JUSTICE KEPHART, April 21, 1919:

This controversy arose over the value of a piece of land forming the northern half of the bed of Arch street between Sixtieth and Salford streets. McCoy, a predecessor in title of the appellant, on May 21, 1858, sold the land north of Arch street to Ann Morris. It was described as follows: "Beginning at a point......in the north line of Arch Street as laid out in the Thirty-fourth Ward, thence extending along the north side of said Arch Street south 78° 59″ west 176 feet......thence ......to the north side of Arch Street and place of beginning. Bounded......and on the south and southwest by said Arch Street." On December 11, 1858, he conveyed to Millich the land on the south side of Arch street, describing the land as running eastwardly along the middle line of Arch street 218 feet to Salford street.

The title to the northern half of the bed of Arch street still remained in the grantor; it was conveyed by his heirs to Annie L. Dean, who, in 1907, conveyed the title to this appellant. Arch street, before the conveyances, was a plotted, approved, but unopened, street, having been approved by the board of surveyors on May 3, 1858. In 1910, the City of Philadelphia directed it to be opened between Salford and Sixtieth streets, whereupon this appellant claimed the value of the land in the northern half of the bed of Arch street. At the trial in the court below, it was agreed that the appellant's land, subject to an implied covenant or easement of right-of-way, was valueless. If the grantees did not have a right-of-way over Arch street, then the land was worth $2,600. It was further agreed that a verdict should be entered as though such right did not exist, the disputed question from the record to be determined later; the court below, believing the land was encumbered by a right-of-way, either through an implied contract, or by virtue of an easement, directed judgment to be entered for the city n. o. v.; from that action, and judgment so entered, the landowner takes this appeal.

As the present case does not involve relative rights of grantor and grantee, where the land is sold from a plan of lots made and adopted by the owner, it is unnecessary to discuss them. Such acts amount to a dedication of the streets to the use of the public forever: Tesson v. Porter Co., 238 Pa. 504-510, and cases therein cited. Where land is conveyed, bounded by an opened street, the grantee takes title to the middle of the street, if the grantor had the title to it and did not expressly, or by clear implication, reserve it: cases from Spackman v. Steidel, 88 Pa. 453; to Fitzell v. Phila., 211 Pa. 1; Neely v. Phila., 212 Pa. 551. If a street is an opened, existing street of a given width and the municipality subsequently widens the street beyond its original width, the grantee of lots sold with reference to the street as indicated, takes title to the middle of the street, if the grantor

owned it; but he does not acquire with the grant an easement of right-of-way nor an implied covenant that a way shall exist over the strip added to the original width of the street, whether it fronts on the grantor's land, or other lots conveyed by the grantor: Fitzell v. Phila., supra. In such case, the intention of the parties must be taken in connection with the opened, existing street. One of the reasons advanced for the easement or implied contract of a way is that in a sale with reference to an unopened or plotted street this circumstance is an inducing feature held out to a purchaser. A lot located on an unopened street, whether plotted by the municipality or by the act of the owner, has a more ready sale than a lot located with no street or alley, where the purchaser must depend on a way of necessity over land of the grantor for ingress and egress. In the Fitzell case, there was no necessity for any implication of a way, as the purchaser bought with an opened, existing street before him; the unused, additional width of the street annexed nothing to his grant, nor was it an inducement in any sense of the word.

Where land is conveyed bounded by an unopened street projected by a municipality, the grantee, by implication, acquires an easement over the bed of that street, unless the circumstances attending the conveyance and the description of the grant negative such implication: Spackman v. Steidel, supra; Opening of Brooklyn Street, 118 Pa. 640; Whitaker v. Phœnixville Borough, 141 Pa. 327; Gamble v. Phila., 162 Pa. 413; Fitzell v. Phila., supra; Neely v. Phila., supra. Such act is in no sense a dedication, nor does the owner covenant that the municipality shall in the future open that street. The lot is sold subject to a possible relinquishment, by the municipality, of its right to open; but, if it does open the street for public use, there can be no doubt that, whatever covenant springs from the conveyance of a lot bounded by a municipally plotted street, is executed when the street is actually opened as a street. This circumstance is not the

sole ground upon which the grantee depends for his means of ingress and egress, as we will show later on, and the fee in the bed of the street subject to these burdens remains in the grantor and his successors in title: Cases, supra.   The "attending circumstances" which defeat the implication of a covenant or easement must be gathered from the instrument conveying the land and "the res gestæ of the transaction."   For illustration see Neely v. Phila., supra, where the court held them ample to show that a right-of-way over the street in controversy was not intended.

When the city relinquishes or abandons its right to open by proper municipal action, one of the inducing features held out to the grantee to purchase disappears, but the implied contract or easement of a way from the lot as between grantor and grantee is not destroyed: Shetter v. Welzel, 242 Pa. 355.   It is, however, limited to such way as may be reasonably necessary to the enjoyment of the lot or lots sold, corresponding in its essential requirements to the street named in the deed.   The grantor and his assigns are estopped from asserting the contrary.   It would, indeed, be a monstrous doctrine that would hold, where lots are sold with reference to streets projected and plotted by a municipality, but not opened, which plotted streets are afterwards vacated, the grantor, owning the fee in the bed of the streets, could close the vacated streets and alleys, thereby depriving his grantees of all ingress and egress to the lots sold them.   There is no case in Pennsylvania that supports such doctrine.   On the contrary, this court has frequently said that where similar circumstances are presented, i. e., land sold with no outlet provided, the law will provide a way of necessity consistent with the reasonable enjoyment of the estate granted; that is, such way as may be necessary to prevent the conveyance from operating as an injury to the grantee.   Of course, the easement, or implied covenant, of a way is not without limitation.   A grantee of a lot abutting on a street other than the vacated ones, can-

not complain of obstructions placed on the vacated streets and alleys for the obvious reason that he has a way in front of his lot corresponding with the one described in his deed, and, so far as the grantor and his assigns are concerned, they are not interfering with it. The grantee, his heirs and assigns, may have the continued benefit of such way, and this answers in full the implied covenant, or the easement, in or arising from the conveyance. Such was the case in Tesson v. Porter Co., supra; Bell v. Pittsburgh Steel Co., 243 Pa. 83. As to the streets and alleys upon which his lot did not abut, he had no rights different from the rights of the public generally. In other words, his implied contract did not extend to streets and alleys not necessary to the enjoyment of his grant, though they might be convenient to its use: Tesson v. Porter Co., supra; Bell v. Pittsburgh Steel Co., supra. The same principle was applied in Henderson et al. v. Young et al., 260 Pa. 334, where a plotted street had been vacated and a part of the street had been occupied by buildings, lawns and fences. It was held that, as the obstructions were not on the portion of the street adjoining the grantee's premises, and there was another street at one end of his lot that could be used, and a part of the plotted street in front of the complainant's land, connecting with still another street, was open to his use, the occupied portion of the plotted street did not interfere with complainant's grant. But the court did not hold, by the use of the language, "a reference to the street as a boundary conveyed no easement over it other than that which would follow as a result of the subsequent action of the city in opening it as plotted to public use," the grantor or his assigns could close up the streets vacated and deprive a lot owner of access to his property. The language quoted was used in connection with that part of the street occupied and used; it did not interfere with the other part of Arbutus street (as it joined Lincoln avenue), nor could it with Green street at the other end. The learned counsel's ingeni-

ous argument does not convince us that the law as established in the Commonwealth has been changed by the case of Henderson et al. v. Young et al., supra.

The discussion of easements of right-of-way is made necessary by reason of the form of the agreement made at the trial of the case. We have in this case, then, a conveyance on one side of Arch street, between the streets mentioned, calling for Arch street as a boundary, while on the opposite side of the street the center line of Arch street is called for. It presents a close similarity to the facts in Clymer v. Roberts, 220 Pa. 162, determining as between the parties that a way existed. The fee in the bed of the northern half is in the grantor and his successors, subject to the right of the grantees to use it as outlined. When the municipality opened it, there being nothing to show the grantor, or his successors, released their claim, the owner was entitled to be compensated for the taking; and the measure of damage as stated in the case of Whitaker v. Phœnixville Borough, supra, applies. There a lot was sold bounded by an unopened street. The court said the grantor "gave the right of frontage on the avenue to his grantee, and deprived himself of all right to interfere in any manner with the frontage line of the lot sold. If this difference in the character of his ownership, after the conveyance of the lot, affected the value of the remaining ground covered by the street, the plaintiff could only recover the value of that land as affected by the conveyance of the adjoining ground. The question whether the value of the ground was thus affected, and to what extent, should be left to the jury, with instructions that it is only the value of the land, subject to the right of the grantee of the adjoining lot to have a clear front on the avenue, that should be allowed as damages." Also in Gamble v. Phila., supra: "It was of no use to theorize about the value of the ground as building lots, since it could not lawfully be used for any such purpose. The evidence on that subject was received, but it could not be permitted to constitute the basis of an

inflated claim for damages upon a theory which had no lawful existence. The learned court did leave to the jury the question, what was the value of the land taken subject to the right-of-way of the plaintiff's grantees, and also to the right of the city to open the street."

In this case, both of these considerations named were within the contemplation of the deeds given by the grantor. The only consideration for the court then was the measure of damages; the parties, by their agreement, having determined this, under the facts and law as we find it, the judgment of the court below must be sustained. The conclusion as to the value of the northern half of the bed of Arch street was fair. On the south side of Arch street, houses had been built on the land, sidewalks constructed and curbing laid. While this was subsequent to the first conveyance by McCoy, as here stated, the right acquired by his grantees, and their successors, in actual use would, in all fairness, cause the bed of the street to be valueless, as counsel agreed.

The Act of May 9, 1889, P. L. 173, provides: "That any street, lane or alley, laid out by any person or persons in any village, or town plot or plan of lots, on lands owned by such person or persons, in case the same has not been opened to, or used by, the public for twenty-one years next after the laying out of the same, shall be and have no force and effect and shall not be opened, without the consent of the owner or owners of the land on which the same has been, or shall be, laid out." As we have just said, this street was opened between Sixtieth and Salford streets, for a part of its width, and used as such. Any public use of part of the property, indicating a purpose to accept the gift, fixes the public right to the whole: Commonwealth v. Shoemaker, 14 Pa. Superior Ct. 194; Wieda v. Hanover Township, 30 Pa. Superior Ct. 424; Hileman v. Hollidaysburg Borough, 47 Pa. Superior Ct. 41, 51. This was said in cases of dedicated streets, and it is true in the case of a street that has been laid out by a town plot, or with reference to streets projected and

plotted by a municipality as to which lots have been sold. The occupation and use by the public of a part of the street is in no sense an abandonment of the remainder of the street. The use of a part draws to it the use of the whole. The act reads "used by the public"; a formal opening of the street by the municipality is not necessary; a user of a part of the street by the lot owners in connection with their grants would be such public use as would exclude the operation of the act. Where the Act of 1889 applies, he who seeks to avail himself of it, must present evidence to support his claim. Here the appellant failed to meet the burden of proof; it is not clear when the way was first used by the various grantees. But we do not see how the act can avail in any event. The land was opened by ordinance in 1910; and we here hold that the owner is entitled to compensation for the land taken subject to such impediments on his ownership as he created, which in this case caused his right to be worthless. The Act of 1889, under the evidence, did not destroy the private rights thus acquired.

The judgment of the court below is affirmed.