# Scott, Appellant, *v.* Donora Southern Railroad Company.

*Road law—Plan of lots—Dedication of street—Acceptance by the public—Railroad—Eminent domain—Damages.*

While title by adverse possession cannot be acquired in land which has been dedicated to the use of the public for the purpose of a street, the rule will not obtain unless the dedication has been accepted.

Where an owner of land lays the land out in a plan of lots and records the plan, but the streets indicated are never accepted by, open to, or used by the public, and the owner and his successors in title for over fifty years keep the land fenced and cultivated, a railroad company, in condemning a portion of the land, cannot claim that it is not liable for the depreciation in value of the whole of the tract because of a division of the tract by a street or streets.

In such a case it is immaterial if the owner of the land within twenty-one years prior to the condemnation proceedings described the land in

partition proceedings and in an affidavit filed under the Act of May 31, 1901, P. L. 352, by reference to the recorded plan of lots.

Argued Oct. 15, 1908. Appeal, No. 53, Oct. T., 1908, by plaintiff, from judgment of C. P. Washington Co., Nov. T., 1902, No. 129, on verdict for plaintiff in case of A. D. Scott v. Donora Southern Railroad Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Appeal from award of jury of view. Before TAYLOR, J.

At the trial when plaintiff was on the stand the following offer was made:

It is proposed to prove by the witness on the stand that from 1874 down to the present time, and prior to 1874, this property was in one inclosure, bounded on the south by Market street and on the east by the Monongahela river; that he has had exclusive and uninterrupted possession of it since 1874; that the witness has known this property for over fifty years and that during all the time he has known it no street or alley has been opened through any part of this tract. To follow this by evidence showing that from 1874 down to the time of the appropriation by the defendant company in the spring of 1902 the plaintiff had used, occupied and farmed the whole of this tract north of Market street and between Second street and the Monongahela river. To show that in the fall of 1902 the defendant company appropriated a right of way through this ground along the river front and constructed thereon its railroad; and to follow that by evidence showing that the construction of the defendant company's road along the river front through the plaintiff's property was an injury to the whole of the plaintiff's property embraced in this suit; and to follow this by asking the witness whether or not he has sufficient knowledge or had sufficient knowledge of the market values of real estate in that neighborhood in the fall of 1902 to enable him to express an opinion as to the market value of this property immediately before the railroad was located, and then ask him to state, if he states that he has such knowledge, what its fair market value was before the railroad was located and its fair

market value immediately after the railroad was located and constructed, as affected by the railroad. This for the purpose of giving the jury his estimate as to the damages sustained by him by reason of the location and construction of the railroad.

Objected to for the reason that the question itself is not a proper one, as not being a true statement of the measure of damages for the jury to determine in this case; second, for the reason that on the evidence introduced by the plaintiff it shows that the property east of Second street to Front street is a part of a plan of lots laid out by one Charles DeHass and dedicated to the public or one which every lot owner on said plan would have a right of way over Front street; that the fact that Front street is an existing street on said plan is recognized by the plaintiff in the evidence offered on the part of the plaintiff in which lots Nos. 20 and 27 on said plan are recognized as fronting on Front street within a period less than the limitation; that the evidence on the part of the plaintiff has also adduced the fact that lots Nos. 20 and 27 were prior to 1895 held by him as a tenant in common with other owners there and that any possession of his would not be adverse during the joint tenancy, but that the limitation period could only begin to run after 1895; these lots Nos. 20 and 27, being situate on either side of the plot claimed by the plaintiff and both being admitted to front on Front street, would be a rededication to the other lot owners of Front street as separating it from the block in question. Also for the reason that the title offered by the plaintiff as to his ownership of the block bounded on the west by Second street and on the east by Front street, recognizes a subdivision of said block into no less than fifteen lots bisected in opposite directions by what is known as Strawberry alley and Hull alley, alleys laid out on said plan; and for the further reason that the condemnation proceedings is the taking of the whole of the lots abutting on Front street and running back to the river, and not taking any of the portion of the property described in the offer. It is objected to for the further reason that the plaintiff has not shown title to any portion of the property on which he proposes to assess damages except lots Nos. 20 and 27; and as generally incompetent and irrelevant.

The Court: This offer as made is competent, but the plaintiff's evidence already in the case shows as a matter of law that there was a subdivision of this property, and the objection is sustained and a bill sealed for the plaintiff. [1]

The plaintiff proposes to prove by the witness David Sickles on the stand and other witnesses to be called, that he and they have known this property of the plaintiff's for upwards of sixty years; that during all that time it has been fenced in substantially as it was in the fall of 1902 at the time the railroad appropriation was made, with a fence extending from Second street down along Market to the river bank and along Second street from Market street to the line of what is now the steel corporation's property, and from thence on Second street down to the Monongahela river; to show that that property during all that period has been used and occupied as one entire property and that during all those sixty years no street or alley has ever been opened through the property and that the public have never exercised any right of traveling through or over any part of this property. And this for the purpose of showing that the right of the public to use any of the streets and alleys as laid out in the DeHass plan of lots which were embraced within the lines of the plaintiff's property had been lost by limitation at the time of the appropriation of the railroad company.

Objected to as incompetent, irrelevant and immaterial for the reason that the plaintiff himself in his introduction of his record title has shown and admitted the user of said streets on this plot within a period of thirteen to fifteen years, and he is estopped from introducing parol evidence to alter the record, and for the further reason that nonuser by the public would not give a right against anyone by limitation.

The Court: Objection sustained and bill sealed for plaintiff.

Verdict and judgment for plaintiff for $5,500. Plaintiff appealed.

*Errors assigned* among others were (1–4), rulings on evidence, quoting the bill of exceptions.

*R. W. Irwin*, with him *Jas. A. Wiley* and *A. T. Morgan*, for appellant.—If no street can now be opened through this tract

of land without the consent of A. D. Scott, the plaintiff, then it follows necessarily that it is one tract, and that in estimating the damages which he sustained by reason of the appropriation of the right of way by the railroad company, he was entitled to recover damages to the whole tract of land, and not simply damage to the narrow strip which lay between a street which never existed, except on paper, and the river bank: Quicksall v. Philadelphia, 177 Pa. 301; Rudolph v. Penna. Schuylkill Valley R. R. Co., 186 Pa. 541; O'Brien v. Schenley Park, etc., Ry. Co., 194 Pa. 336; Kossler v. Ry. Co., 208 Pa. 50; Cameron v. R. R. Co., 157 Pa. 617.

*T. F. Birch*, for appellee, cited: Rudolph v. Penna. Schuylkill Valley R. R. Co., 186 Pa. 541; Kossler v. Ry. Co., 208 Pa. 50.

OPINION BY MR. JUSTICE MESTREZAT, January 4, 1909:

In 1815 Charles DeHass, being the owner of a tract of land on the west bank of the Monongahela river in Washington county, laid out a plan of lots, intersected by streets and alleys, and called it West Columbia. The plan was duly recorded in the recorder's office of Washington county. Front street extended north and south and was substantially parallel with the river. The next street west and parallel to Front street was Hull alley, and the next street west and parallel to Hull alley was Second street. These streets were intersected at right angles by Market street (farthest south) Strawberry alley, Chestnut street and Mulberry alley.

A. D. Scott, the plaintiff, obtained title to certain lots in the plan on May 8, 1893, by proceedings in partition in the estate of Mary H. Scott, deceased. On November 25, 1901, the plaintiff filed in the recorder's office of Washington county a statement under oath, as required by the Act of May 31, 1901, P. L. 352, in which he declared that he had acquired title in fee by twenty-one years' adverse possession to fifteen lots in the DeHass plan, describing them by number and reference to the streets and alleys of the plan.

In October, 1902, the defendant company presented its petition to the common pleas of Washington county averring that it had appropriated for a right of way five lots of ground

in the DeHass plan known as West Columbia, "reputed to belong to the defendant, A. D. Scott, and the streets and alleys abutting thereon," and prayed for the appointment of viewers to assess the damages resulting from the appropriation of the lots. The lots, taken by the company and aggregating 0.2921 acres, were separately described and all, with possibly one exception, were contiguous and lay east of Front street and between it and the river, and between Market street on the south and Mulberry alley on the north. Viewers were appointed, March 23, 1903, and made an award in favor of the plaintiff. The plaintiff alleging that these lots were part of a larger tract of land owned by him, filed a statement of his claim in the proceedings to assess damages, and therein averred that the defendant company had entered upon and appropriated its right of way out of a piece or parcel of land described as follows: "Bounded on the South by what was known as Market street in the DeHass plan of lots of West Columbia, on the West by Second street, on the East by the Monongahela river, and on the North by property of the Union Steel Company, containing 7.5852 acres." The statement was traversed by the defendant company which denied that the plaintiff was the owner of the property described in the statement, and averred that it had not taken or injured by its appropriation any other property of the plaintiff or reputedly his than the block of lots described in its petition for the appointment of viewers.

On the trial of the cause the plaintiff claimed title to the ground covered by the description in his statement. He claimed title to some of the lots through proceedings in partition in the orphans' court and to the remainder of the ground by twenty-one years' adverse possession. He alleged and offered to show that for more than twenty-one years he and those under whom he claimed had occupied the property described in the statement filed by him in the case, that they had inclosed it by a fence and had farmed the entire area, including streets and alleys, and that the streets and alleys were never accepted by, opened to, or used by the public. He therefore claimed that he was entitled to damages for the injury done

to the whole tract of seven acres by reason of the appropriation for the defendant's right of way.

The defendant company denies that the plaintiff had any title to any part of the property, claimed by him, and especially the part occupied by it as a right of way. It appears that the company's appropriation, with possibly the exception of a part of a lot, lies east of Front street and occupies only the lots in the DeHass plan lying east of that street. The defendant contended, and the contention was sustained by the trial court, that in estimating the damages, the jury should take into consideration only the lots lying east of Front street, that if the plaintiff was the owner of the other lots west of that street, as claimed by him, they could not be considered in estimating the damages, that the lots east of Front street and those west of it were physically separated by that street, and therefore were not so connected or used by the plaintiff as to constitute one piece or parcel of ground entitling the plaintiff to have it all considered in estimating the damages.

The court submitted two questions to the jury: whether the plaintiff was the owner of the lots east of Front street appropriated by the defendant company for its right of way, and if so, what damages he had sustained by reason of the appropriation. The jury returned a verdict in favor of the plaintiff and judgment having been entered thereon, the plaintiff has taken this appeal.

The plaintiff, in certain offers of evidence on the trial, proposed to prove that for upwards of sixty years the land bounded on the south by Market street, on the west by Second street, on the east by the Monongahela river and on the north by the Union Steel Company property had been inclosed by a fence, substantially as it was in the fall of 1902, at the time the railroad company made its appropriation; that the property during that period had been used and occupied as one entire property; that during that period no street or alley had ever been opened through the property within the designated boundaries and the public had never exercised any right of traveling through or over any part of it; that he had been in exclusive and uninterrupted possession of the whole of said

property since 1874, and during that time had used, occupied and farmed the whole of the tract; for the purpose of showing title in him to the entire tract, and that the right of the public to use as highways any streets or alleys laid out in the DeHass plan of lots, embraced within the designated boundaries, had been lost by limitation at the time of the appropriation by the railroad company. The court rejected the testimony and ruled as matter of law that Front street as laid out and designated on the DeHass plan of lots divided the land claimed by the plaintiff into two parts or tracts, and that in estimating the damages the jury were confined to the part of the tract lying between Front street and the river.

In sustaining the objection to the plaintiff's offers of evidence and holding that the land described in plaintiff's statement was divided into two tracts we think the learned court erred.

The DeHass plan of lots was recorded in 1815. This was a dedication of the streets to public use and operated as a relinquishment of all claims by the owner for damages for the use of the land within the lines of the streets for street purposes. But the municipality was not compelled to accept the dedication and failing or refusing to do so and to open the streets upon the ground, they would not become public streets or highways: In re Vacation of Alley, 104 Pa. 622; Commonwealth v. Moorehead, 118 Pa. 344; Downing v. Coatesville Boro., 214 Pa. 291; Oakley v. Luzerne Borough, 25 Pa. Superior Ct. 425. As there was no actual or implied acceptance of the dedication by the municipality, it follows that Front street, dedicated to public use by DeHass, was not a public highway in 1902 when the defendant company entered upon and appropriated the land for its right of way.

The Act of May 9, 1889, P. L. 173, 2 Purd. (12th ed.) 1875, enacts as follows: "Any street, lane or alley, laid out by any person or persons in any village or town plot or plan of lots, on lands owned by such person or persons, in case the same has not been opened to, or used by, the public for twenty-one years next after the laying out of the same, shall be and have no force and effect and shall not be opened, without the consent of the owner or owners of the land on which the same has been,

or shall be, laid out." The purpose of the act is to relieve land upon which streets have been laid out by the owners, but not opened or used for twenty-one years, from the servitude imposed: Quicksall v. Philadelphia, 177 Pa. 301; Woodward v. Pittsburg, 194 Pa. 193. The act declares, as will be observed, that a street dedicated to public use by the owner of the land through which it passes, if not opened to, or used by, the public for twenty-one years next after the dedication "shall be and have no force and effect." After the statutory period, therefore, if no action has been taken to subject the street to public use, the servitude imposed by the owner upon his land for such use is removed, and the street is of no force or effect as a public highway. The land is discharged from such servitude and the dedicated portion of it has entirely lost its character as a public street.

Assuming that the plaintiff could have sustained by proof the allegations of his offer, Front street, dedicated by the owner in 1815, has never been accepted or opened to the public, and therefore the street was not a public highway at the time the defendant company made the appropriation for its right of way. The municipal authorities could exercise no authority over the strip of land dedicated; nor could an indictment be sustained for obstructing it as a public street or highway: Commonwealth v. Shoemaker, 14 Pa. Superior Ct. 194. It is, however, contended by the defendant company, and was the view entertained by the court below, that there was a re-dedication of the streets in the DeHass plan within twenty-one years of the appropriation by the description of the lots awarded the plaintiff in the partition proceedings in which they were described by reference to the streets, and also by the description of the lots in his declaration of adverse possession made and recorded by the plaintiff in 1901, in which he describes the lots by reference to the DeHass plan. But this contention is not tenable. These descriptions of the property show no intention to dedicate anew to public use the streets named in the DeHass plan, but were simply used to identify or designate the property with which the parties were dealing: Cotter v. Philadelphia, 194 Pa. 496. In that case Mr. Justice FELL de-

livering the opinion says (p. 497): "At the trial of this case the city sought to evade the limitation of the act of 1889 by proof that a conveyance of lots was made in 1880, in which they were described as lots marked on the plan referred to, made and recorded in 1848. This it was claimed was a new dedication against which the limitation had not run. This claim cannot be sustained. . . . The reference to the plan for convenience of description, and to the streets as boundaries, does not give rise to an implication of a new dedication of the land for streets. A dedication to the public use must rest on the intention or clear assent of the owner, and must be under such circumstances as to indicate an abandonment to the use of the community. The owner in 1880 had nothing to rededicate. The dedication in 1848 was binding on him, and continued so until the limitation of the act of 1889 relieved the land of the servitude imposed upon it." If, as the plaintiff alleges, he is the owner of the land on both sides of Front street, his title on each side extends to the middle of the street, Paul v. Carver, 26 Pa. 223, and, assuming the facts to be as he claims, the land is not subject to an easement for a public highway. There is therefore no physical separation of the plaintiff's land in two pieces or tracts by a public street. We need not determine the rights of any party who may claim an easement over the land dedicated by DeHaas as Front street by reason of his being the owner of a lot in the DeHass plan. This is immaterial so far as it affects the plaintiff's right to have the land considered as one tract in assessing damages, if, as alleged in his offers of evidence the whole tract of seven acres has, for more than half a century, been enclosed by a fence and occupied and used as one entire property. This right cannot be defeated by the simple allegation of an imaginary public street through the plaintiff's land. It has been held that while title by adverse possession cannot be acquired in land which has been dedicated to the use of the public for the purpose of a street, the rule will not obtain unless the dedication has been accepted: Uptegraff v. Smith, 106 Iowa, 385; Corwin v. Corwin, 24 Hun (N. Y.), 147.

The first and fourth assignments of error are sustained, and the judgment is reversed with a venire facias de novo.